# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

_____

**TINO SMITH, SR.,**

   **Plaintiff,**

**v.**                                                                                 **No. 18-2078-SHM-cgc**

**FEDERAL EXPRESS CORPORATION,**

   **Defendant.**

_____

## REPORT AND RECOMMENDATION
_____

Before the Court is Defendant Federal Express Corporation's Motion for Summary Judgment (D.E. # 18). This case has been referred to the undersigned United States magistrate judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate pursuant to Administrative Order 2013-05[1].

   I.   Jurisdiction

The instant case was removed to the United States District Court pursuant to 28 U.S.C. §§ 1441(a) and 1446 from the Circuit Court of Shelby County, Tennessee. The court has jurisdiction over Plaintiff's Title VII of the Civil Rights Act of 1964 ("Title VII") and the Genetic Information Nondiscrimination Act of 2008 ("GINA") claims pursuant to 28 U.S.C. § 1331.

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

II. Procedural history

Plaintiff filed his complaint in the Circuit Court of Shelby County, Tennessee on December 19, 2017 alleging retaliation by Defendant in violation of Title VII and GINA. (D.E. # 1-1, PageID 5-6). Defendant removed Plaintiff's complaint on February 2, 2018. (D.E. # 1). Defendant filed its motion for summary judgment on November 9, 2018. (D.E. # 18). Plaintiff filed his response on November 26, 2018. (D.E. # 19)

III. Summary judgment standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material act and [that] the movant is entitled to judgment as a matter of law." The party bringing the summary judgment motion bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may only be satisfied by "citing to particular parts of materials in the record..." or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.' " *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir.2003) (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).

When the moving party has made the required showing, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute exists if a reasonable jury could review the evidence and return a verdict for the

nonmoving party. *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 467 (6th Cir.2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Phelps v. State Farm Mut. Auto. Ins. Co.*, 680 F.3d 725, 735 (6th Cir.2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Reliance on the pleadings is insufficient. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Instead, the nonmoving party "must adduce concrete evidence on which a reasonable juror could return a verdict in [its] favor." *Stalbosky v. Belew*, 205 F.3d 890, 895 (6th Cir.2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989).

The Local Rules of the United States District Court for the Western District of Tennessee require the non-moving party to respond to each fact set forth by the movant by either "agreeing that the fact is undisputed", "agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only", or "demonstrating that the fact is disputed.' LR 56.1(a)  If the non-movant contends that there are additional facts that are material, each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact in in dispute.  LR 56.1(b)  Failure to respond to a moving party's statement of material facts shall indicate that the asserted facts are not disputed for purposes of summary judgment.  LR 56.1(d)

IV. Proposed findings of fact[2]

Plaintiff began his employment with FedEx on September 28, 2009 as a permanent, part-time handler with FedEx's Indianapolis, Indiana Hub Operations. (Declaration of Myron Donald ("Donald Decl.") ¶ 6; Pl.'s Dep. at 50:9-11 & Exh. 5). Plaintiff received copies of FedEx's Employee Handbook and People Manual, which include the company's policies on discrimination, harassment, and retaliation as well as FedEx's internal complaint procedures. (Pl.'s Dep. at 54:6-21, 55:15-56:1 & Exh. 6). FedEx's Anti-Harassment Policy condemns any acts in FedEx's work environments that create the potential for illegal harassment, both in terms of individual

---

[2] Local Rule 56.1(b) provides that any party opposing the motion for summary judgment must respond to each fact submitted by the movant by either (1) agreeing that the fact is undisputed, (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment, or (3) demonstrating that the fact is disputed. "Each fact must be supported by specific citation to the record. Such response shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant." Local Rule 56.1(b). Here, Plaintiff failed to respond to FedEx's Statement of Undisputed Material Fact as required by the Local Rules. Although Plaintiff's Response contains a section entitled "Designation of Material Facts in Support of Opposition," these are not in the format required by the Local Rules and do not respond to any of the facts set forth by FedEx. Further, Plaintiff includes no citations to evidence of record in support of his "Designation of Material Facts." Accordingly, it is RECOMMENDED that FedEx's Statement of Undisputed Material Fact be deemed as undisputed.

In addition, "the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute." Local Rule 56.1(b). Plaintiff's "Designation of Material Facts in Support of Opposition" failed to do so in the manner prescribed by the Local Rules. Specifically, Plaintiff does not set forth his facts in separate, numbered paragraphs and does not include any citations to the record. Plaintiff also does not address the facts at issue in this case, only citing other alleged accolades he received at FedEx before his termination, detailing the appeal process regarding his unemployment benefits, and mentioning an unrelated federal case. Therefore, it is further RECOMMENDED that this section of Plaintiff's Response not be considered as setting for additional material facts.

- 4 -

employee morale and in violation of applicable federal, state, and local laws. (Pl.'s Dep. at Exh. 15).

On March 23, 2016, Plaintiff filed a Complaint of Discrimination against "Federal Express" with the Indiana Civil Rights Commission ("Indianapolis Charge"), which alleged that FedEx discriminated against him and retaliated against him by failing to hire him for various management positions in Indianapolis. (Pl.'s Dep., Exh. 16).

Plaintiff later attained the position of Senior Manager, at which time he transferred to Memphis, Tennessee. (Pl.'s Dep. 50:14-24). At the FedEx World Hub (the "Hub") in Memphis, Tennessee, Brandon McAlpine ("McAlpine") held the position of Security Specialist III and was assigned to investigate complaints of harassment, workplace violence, theft, and security threats. (McAlpine Decl. ¶¶ 3-4). FedEx Employees who come in contact with offensive material in the workplace have the option to provide that material to FedEx Security or Human Resources ("HR").

On November 17, 2016, at approximately 5:56 a.m., McAlpine was notified by FedEx uniformed security personnel at the Hub that there were managers at FedEx's main screening facility who were requesting to see a Security Specialist. (*Id.* ¶ 6). McAlpine proceeded to meet with these FedEx manager--Nathan Miller ("Miller"), Ronnie Messer ("Messer"), Timothy Lloyd ("Lloyd"), and Timothy Liley ("Liley")---regarding a letter titled "A Modern Day Breaking by using positional power" (the "Letter") that was found on several managers' golf carts parked on the rear side of FedEx's Portia Building. (McAlpine Decl. ¶ 7). The Letter depicted an image of a dark-skinned individual with his arms and legs being whipped and includes language about the "deviant" being pummeled to submission. (Pl.'s Dep. 109:14-25 & Exh. 11).

As part of his regularly assigned duties, McAlpine conducted a review of video footage of the identified area around the Portia Building and observed that, at approximately 4:30 a.m. on that date, an African American male employee was observed parking a golf cart, exiting the cart, and placing white pieces of paper in several managers' golf carts that were parked. (McAlpine Decl. ¶¶ 5, 9). Video footage revealed that this employee continued around the building placing white pieces of paper inside of golf carts and then continued to the east side of the building where he was observed entering the building through the east entry door. (*Id.* ¶ 9). An image was captured of the employee, who was later identified as Plaintiff. (*Id.*) On November 19 and 21, 2016, McAlpine collected written statements from Miller, Messer, Lloyd, and Liley. (*Id.* ¶ 8). On November 22, 2016, McAlpine was present when Plaintiff participated in a videotaped interview about the alleged discrimination of derogatory material, and McAlpine also obtained a written statement from Plaintiff. (*Id.* ¶¶ 10, 13).

During Plaintiff's interview, he initially denied disseminating the material, stating only that he had seen the letter on the ramp before and that an unknown employee passed it to him on November 15, 2016. (*Id.* ¶ 10). As the interview continued, Plaintiff stated that he passed it to another employee whom he could not identify by name and then advised that he put one in a manager's cart. (*Id.*) Plaintiff then stated that he instead placed it on a manager's desk and that was the only one he placed. (*Id.*) Ultimately, Plaintiff admitted that he placed the letters on the managers' carts. (*Id.* ¶ 11; Pl.'s Dep. 116:7-14). Plaintiff states that he did not know who might have picked up the letters he disseminated or if they would be offended by them. (Pl.'s Dep. at 127:24-128:1).

McAlpine provided the witness statements, video footage from around the Portia Building,

and other information obtained during his investigation to FedEx's Security Management, HR, Legal Department, and Record Retention. (McAlpine Decl. ℙ 14). As a result of the investigation, Plaintiff's employment with FedEx was terminated on November 30, 2016 for violation of the Anti-Harassment Policy and the Acceptable Conduct Policy. (Donald Decl. ℙ 7; Pl.'s Dep., Exhs. 10, 12, 15).

Myron Donald ("Donald") had held the position of Manager of Human Resources at FedEx since February 16, 2010, and he became familiar with Plaintiff during his time as Manager at the Hub. (Donald Decl. ℙℙ 3-4). FedEx encourages employees to report all allegations of unfair treatment, discrimination, or harassment to management or the HR department through FedEx's Internal EEO Complaint Procedure. (*Id*. ℙ 8). In addition to its internal complaint procedure, FedEx also offers a separate internal grievance procedure known as the Guaranteed Fair Treatment Procedure ("GFTP"). (*Id*.; Pl.'s Dep. at 58:8-14). The GFTP process allows employees to dispute the fairness of disciplinary actions or related employment decisions, such as terminations, through a three-step process that involves the following: (1) management review; (2) officer review; and, (3) review by an appeals board. (Donald Decl. ℙ 12; Elam Decl. ℙ 5).

Plaintiff elected to appeal the decision to terminate his employment through the GFTP process. (Donald Decl. ℙ 11; Elam Decl. ℙ 5; Sowell Decl. ℙ 6; Pl.'s Dep. 128:9-11). At Step One of the GFTP, Ernest Sowell ("Sowell"), then Managing Director of National Hub Operations in Memphis, Tennessee, was the member of management who reviewed Plaintiff's GFTP Complaint. (Sowell Decl. ℙℙ 4, 7). Managers at FedEx are held to a higher standard than hourly employees and are expected to be leaders and uphold FedEx's policies and procedures with honesty and integrity. (Sowell Decl. ℙ 12). Plaintiff had been an Operations Manager in Sowell's

- 7 -

organizational chain of command prior to the termination of his employment. (Sowell Decl. ¶¶ 4-5). On December 8, 2016, Sowell held the Step One meeting with Plaintiff regarding the termination of his employment. (Sowell Decl. ¶ 9). Prior to the meeting, Sowell reviewed Plaintiff's GFTP complaint and the information compiled by FedEx Security. (*Id*.) Sowell also personally watched the video footage that had been obtained. (*Id*.). Sowell observed that the video footage showed Plaintiff putting what appeared to be pieces of paper in carts parked outside of the Portia Building at the Hub. (*Id*.) During the Step One meeting, Plaintiff had the opportunity to provide any information that he wanted to Sowell to consider in deciding the outcome of his GFTP complaint. (*Id*. ¶ 10). Upon review of all the facts and circumstances leading to Plaintiff's termination, and upon considering the information provided by Plaintiff during the Step 1 GFTP meeting regarding his conduct, Sowell elected to uphold management's decision to terminate his employment. ( *Id*. ¶ 11).

Patrick Elam ("Elam"), who was then Vice President of the Hub, was the officer who received Plaintiff's Complaint at Step 2 of the GFTP. (Elam Decl. ¶¶ 4, 6). On December 28, 2016, Elam conducted a meeting to review Plaintiff's Step 2 GFTP that was attended by Plaintiff and Donald. (Donald Decl. ¶ 13; Elam Decl. ¶¶ 8-9). Elam elected to uphold management's decision to terminate Plaintiff's employment after a personal review of all the facts and circumstances leading to the termination, including Plaintiff's initial untruthfulness about his conduct. (Elam Decl. ¶ 11). While Donald was not tasked with influencing Elam's decision regarding the GFTP, upon review of the facts and circumstances leading to Plaintiff's termination, Donald also supported management's decision. (Donald Decl. ¶¶ 13-15).

According to Plaintiff, unnamed "powers that be" in Indianapolis" were actually

responsible for his termination because he filed the Indianapolis charge. (Pl.'s Dep. at 152:20-22; 188:23, 189:3). Plaintiff further states that he was "marked" after an unspecified communication from FedEx in Indianapolis to FedEx in Memphis that he was trying to file a lawsuit. (Pl.'s Dep. at 190:3-191:1). Plaintiff admits, however, that he "assume[d]" that this is what happened because FedEx is "one company" and that the "Director in Indy" knows the "Director in Memphis." (Pl.'s Dep. 190:3-191:1). Plaintiff also admits that he has no knowledge that anyone at FedEx in Indianapolis was aware of the picture of the slave being whipped or the investigation of his dissemination of that picture. (Pl.'s Dep. 191:6-10). No one involved with Plaintiff's GFTP review communicated with anyone in management or HR at any FedEx location in Indianapolis regarding the termination of Plaintiff's employment. (Donald Decl. ¶ 16; Elam Decl. ¶ 13). Plaintiff also had no problems with his direct manager, David Kirby ("Kirby"), Sowell, or Elam. (Pl.'s Dep. at 254:23-255:2). Ultimately, Plaintiff filed a Charge of Discrimination with the Equal Opportunity Commission ("EEOC") in Memphis on December 27, 2016 ("Memphis Charge") alleging that FedEx discriminated against him and retaliated against him by terminating his employment. (Pl.'s Dep., Exh. 17).

.

> V. Proposed analysis
>> a. Genetic Information Nondiscrimination Act ("GINA") retaliation claim

GINA prohibits an employer from discriminating or taking adverse employment actions against an employee "because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1), (2). GINA also makes it an "unlawful employment practice for an employer to request, require, or purchase genetic information with respect to any employee or a family member

of the employee," with some exceptions. 42 U.S.C. § 2000ff-1(b). For employees subjected to an unlawful employment practice, GINA provides a private right of action, incorporating the enforcement procedures and remedies of Title VII. 42 U.S.C. § 2000ff-6(a)(1). *Jackson v. Regal Beloit Am., Inc.*, No. CV 16-134-DLB-CJS, 2018 WL 3078760, at *15 (E.D. Ky. June 21, 2018)

Because there are no facts to support any claim under GINA, it is RECOMMENDED that summary judgment be granted as to this claim.

      b.   Title VII retaliation claim

On summary judgment, if a plaintiff alleges no direct evidence, the plaintiff first has the burden of establishing a prima facie case of retaliation under Title VII. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004). In the Sixth Circuit, a prima facie retaliation claim requires a plaintiff to demonstrate at summary judgment that (1) he engaged in protected activity under Title VII, (2) the defendant-employer knew he engaged in this protected activity, (3) the defendant-employer then took an adverse employment action against plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. Id. If a plaintiff establishes a prima facie case of retaliation by a preponderance of evidence, the burden then shifts to defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). "If the defendant meets its burden, the plaintiff must prove the given reason is pretext for retaliation." *Id*.

Viewing the facts in the light most favorable to the non-movant, Plaintiff satisfies the first prong with the Indianapolis EEOC charge and the third prong with his termination. However, the prima facie case fails at the second and fourth prongs. At his deposition, Plaintiff admitted that he assumed that because FedEx is one company that the director in Indianapolis and the director in

- 10 -

Memphis would know each other. Plaintiff's assumption is not sufficient to demonstrate that any of the decision makers in Memphis were aware of the Indianapolis Charge. *See*, *Mukhall v. Ashcroft,* 287 F.3d 543, 552 (6th Cir. 2003), found no error in district court determination that plaintiff failed to produce direct of circumstantial evidence from which a reasonable factfinder could infer that his supervisors knew of his protected activity)

Plaintiff does not address any of the factors required to establish a prima facie case of retaliation. Instead, he relies on the decision rendered a State of Tennessee unemployment benefits appeal panel. Defendant correctly references Tenn. Code Ann. § 50-7-304(k) which explicitly precludes the use of "finding(s) of fact of law, judgment, conclusion or final order made with respect to a claim for unemployment compensation" in any "separate or subsequent action or proceeding in another forum."

Further, Defendant has proffered a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant terminated Plaintiff for violation of the company's Anti-Harassment Policy and the Acceptable Conduct Policy. Plaintiff does not argue that this reason is pretext for retaliatory action. Instead he argues that Defendant terminated him after a first offense rather than following a progressive discipline scheme outlined in the policies.

Therefore, it is RECOMMENDED that summary judgment be granted as to Plaintiff's Title VII retaliation claim.

VI.   Conclusion

Based on the foregoing, it is RECOMMENDED that there are no material issues of disputed fact and that Defendant is entitled to judgment as a matter of law as to each of the claims presented in Plaintiff's complaint.

Signed this 15th day of February, 2019.

>s/ Charmiane G. Claxton
>CHARMIANE G. CLAXTON
>UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL**